UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHANLER JAMES HIGBEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 6:18-cv-03199-SRB |
| | ) | |
| AMANDA SCHEETZ, NIANGUA R-V SCHOOL DISTRICT, | ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

**COMES NOW** plaintiff, by and through his attorneys of record, Corbett Law Firm, P.C., and for his cause of action against defendants, states, alleges and avers as follows:

### General Allegations - Jurisdiction and Venue:

1. Jurisdiction is proper in this Court because this Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because plaintiff seeks relief under Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681-1688 (Title IX), 42 U.S.C. § 1983, and 42 U.S.C. § 1988 and this Court has supplemental jurisdiction over plaintiff's state law claim(s) asserted herein.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### General Allegations - Parties:

3. Plaintiff Chanler James Higbee was born on June 20, 1999 (hereinafter referred to as Chanler) is a resident of Laclede County, Missouri.

4. Defendant Amanda Scheetz (hereinafter referred to as Scheetz) is a resident of Webster County, Missouri.

1

5. Defendant Niangua R-V School District (hereinafter referred to as Niangua) is a Missouri public school district located in Webster County, Missouri.

6. Defendant Niangua R-V School District is a school district that receives federal financial assistance.

**General Allegations Common to All Counts:**

7. At all times relevant herein, Chanler was a student at Niangua R-V School District.

8. At all times relevant herein, Scheetz was a nurse at Niangua and at all times was acting within the course and scope of her employment.

9. Beginning in 2014, defendant Scheetz began exchanging text messages with Chanler who was then 14 years old and in the eighth grade.

10. That there were multiple principals on staff at Niangua that were responsible of all students which numbered no more than 50.

11. Plaintiff's class in particular was made up of approximately 9 students.

12. During the end of Chanler's eighth grade year and the first half of Chanler's ninth grade year at Niangua's school, Scheetz, while in the course and scope of her employment at Niangua, had Chanler removed from one or more classes per day and sent to her office, located in the administrative area of the school building.

13. The school teachers, principal and vice principal were fully aware that Scheetz was spending an atypical amount of time with Chanler, that Chanler had no outward medical problem and that Scheetz demeanor was an indicator that there was more to her and Chanler's relationship other than that of nurse/patient.

14. Scheetz office was in close proximity to the principal's office where some of her interactions could be observed and monitored.

15. Scheetz would remove Plaintiff for reasons such as to examine his ears and eyes and to have him help her with chores around the school.

16. At each encounter when Scheetz would remove Chanler from his classes she would have personal conversations with him which included, but not limited to telling him that he was good looking and that she was unhappy with her husband.

17. To remove Plaintiff from class, approximately half of the time, Scheetz would call the teacher in charge sometimes more than one time per week to have Chanler removed.

18. To remove Chanler from class, approximately the other half of the time, Scheetz would personally come to Chanler's class and walk him back to her office.

19. At no time, until a complaint by a student was made about Scheetz conduct did any teacher or principal question Scheetz about the need to see Chanler or about her relationship with him.

20. On or about June 10, 2015, when Chanler was 15 years old, Chanler accompanied Scheetz to Cox Hospital in Springfield, Missouri.

21. On or about June 10, 2015 Scheetz parked her vehicle in a parking garage at Cox Hospital and retrieved a check from the hospital.

22. When Scheetz returned to the car, Scheetz put her hand on Chanler's leg and told him that she wanted to have sex with him.

23. Scheetz and Chanler then had sexual intercourse in the back seat of Scheetz's vehicle.

24. Over the following several months, during the next school year, Scheetz continued to have Chanler removed from his classes at Niangua's school on a daily basis to come to the nurse's office.

25. At these daily meetings in Scheetz's office she would lock the door to the nurse's office and engage in oral sex with Chanler.

26. Several months past until another student discovered the conduct of Scheetz and reported it to the Niangua.

27. Only after receiving notice from a student about Scheetz conduct did it take action against Scheetz.

28. Niangua took the following action against Chanler:

   a. Chanler was made to sit in defendant Niangua's office or in the bus barn during the classes that were taught by female teachers.

   b. Chanler was removed from Future Farmers of America because it was instructed by a female teacher.

   c. Chanler was removed from baseball because he was not allowed to be on the baseball field when there were females on the field.

29. As a result of Sheetz conduct and Niangua's response to the conduct, Chanler was constructively forced to quit school.

30. Chanler then attempted to attend another nearby school in Conway, MO, but due to the humiliation dropped out.

**Count I – Violation of Chanler's 14th Amended Rights by Defendant Scheetz**

**COMES NOW** Chanler, by and through his attorneys of record, Corbett Law Firm, PC and for his cause of action against Scheetz, states, alleges and avers as follows:

4

31. Chanler incorporates in Count I each and every allegation and averment as set forth in Paragraphs 1-30 as if fully set forth herein *in haec verba.*

32. The actions of Scheetz violated Chanler's liberty interest of personal safety and bodily integrity.

33. Scheetz conduct was deliberately indifferent to Chanler's constitutional rights pursuant to the 14th Amendment of the constitution of the United States.

34. Scheetz conduct "shocks the conscience".

35. As a result of Scheetz Chanler suffered emotional distress, embarrassment, public humiliation, education, training and enjoyment of life.

36. The conduct of Scheetz was malicious, wanton, and reckless and an award of punitive damages is warranted to defer her and others like her from committing similar acts.

**WHEREFORE**, Chanler prays for judgment against Scheetz for actual compensatory, and punitive damages, attorney's fees and expenses, for his costs incurred herein, for interest at the legal rate, and for such further and additional relief as the Court may deem just and proper.

### Count II – Unconstitutional Policy of Niangua R-V School District

**COMES NOW** Chanler, by and through his attorneys of record, Corbett Law Firm, PC and for Count II of his Complaint against Defendant Niangua R-V School District states as follows:

37. Chanler incorporates in Count II each and every allegation and averment as set forth in Paragraphs 1-36 and as if fully set forth herein *in haec verba.*

38. Niangua had actual and constructive knowledge of the aforementioned conduct of Scheetz.

39. Niangua's School principal and vice principal had actual and constructive notice of Scheetz conduct.

40. Niangua's school principal and vice principal had policy making authority and the ability to stop Scheetz once it had constructive and actual notice of Scheetz conduct.

41. Niangua did not stop Scheetz until a third party brought it to its attention, a significant period of time after it had constructive and actual notice.

42. Niangua failure to act when it first had constructive and actual notices Niangua condoned Scheetz conduct and Scheetz conduct became the policy of Niangua.

43. The policy of Niangua was sole and proximate cause of Chanler's injures as described herein.

44. As a result of Niangua Chanler suffered emotional distress, embarrassment, public humiliation, education, training and enjoyment of life.

**WHEREFORE**, Chanler prays for judgment against Niagnua for actual compensatory, damages, attorney's fees and expenses, for his costs incurred herein, for interest at the legal rate, and for such further and additional relief as the Court may deem just and proper.

### Count III - Title IX

**COMES NOW** Chanler, by and through his attorneys of record, Corbett Law Firm, PC and for his cause of claims against Niangua states as follows pursuant to Title IX 20 U.S.C. §1681-1688:

45. Chanler incorporates in Count III each and every allegation and averment as set forth in Paragraphs 1-44 and as if fully set forth herein *in haec verba.*

46. Niangua is an educational institution that receives federal funds.

6

47. Title IX prohibits the discrimination of beneficiaries of programs and activities that receive federal funds.

48. Prior to Scheetz conduct, the school board of Niangua granted to its principal and vice principal supervising authority of Scheetz.

49. The principal and vice principal of Niangua had constructive and actual notice of Scheetz conduct, but failed to take appropriate timely action.

50. As a result of Niangua not taking action against Scheetz is the sole and proximate cause of Chanler being discriminated and Niangua is in violation of Title IX.

51. As a result of Niangua's actions Plaintiff has suffered emotional distress, embarrassment, public humiliation, education, training and enjoyment of life.

**WHEREFORE**, Chanler prays for judgment against Niangua for actual compensatory, damages, attorney's fees and expenses, for his costs incurred herein, for interest at the legal rate, and for such further and additional relief as the Court may deem just and proper.

### Count IV - Title IX

**COMES NOW** Chanler, by and through his attorneys of record, Corbett Law Firm, PC and for Count IV of his Complaint states as follows:

52. Chanler incorporates in Count IV each and every allegation and averment as set forth in Paragraphs 1-51 and as if fully set forth herein *in haec verba.*

53. After Scheetz was put on administrative leave Chanler was no longer able to attend any class in which the teacher was female.

54. After Scheetz was put on administrative leave, Chanler was no longer allowed to play or attend baseball games in which girls were present.

7

55. Chanler was required to sit on a bus instead of attending class if the school teacher was female.

56. The treatment of Chanler after Scheetz suspension violated Title IX in that the treatment of Chanler was solely and proximately based on his sex.

57. As a result of Niangua conduct Chanler suffered embarrassment, public humiliation and loss of enjoyment of life.

**WHEREFORE**, Chanler prays for judgment against Niangua for actual compensatory, damages, attorney's fees and expenses, for his costs incurred herein, for interest at the legal rate, and for such further and additional relief as the Court may deem just and proper.

### Count V – Failure to train 42 U.S.C. § 1983

COMES NOW Chanler, and for Count V of his complaint states as follows:

58. Chanler incorporates in Count V each and every allegation and averment as set forth in Paragraphs 1-57 and as if fully set forth herein *in haec verba.*

59. The sexual abuse of Chanler by Scheetz took place on school property.

60. For several months the sexual abuse of Chanler took place on a daily basis following Scheetz requiring that Chanler be excused from one or multiple classes on a daily basis for several months.

61. That Niangua had a duty to provide training and make sure that its teachers and school staff were appropriately trained to identify and prevent sexual abuse of a child by other school employees.

62. The failure of school officials, teachers and school employees to report the conduct of Scheetz demonstrated an obvious failure on behalf of Defendant to train its supervisors and other employees.

8

63. The failure of Niangua to train its employees to detect, report and stop the sexual abuse of Chanler was deliberately indifferent to Chanler's constitutional rights and was the sole and proximate cause of Chanler's damages as previously described herein.

64. As a result of Niangua conduct Chanler suffered embarrassment, public humiliation and loss of enjoyment of life.

**WHEREFORE**, Chanler prays for judgment against Naingua for actual compensatory, damages, attorney's fees and expenses, for his costs incurred herein, for interest at the legal rate, and for such further and additional relief as the Court may deem just and proper.

### Count VI – Scheetz – Battery

**COMES NOW** Chanler, by and through his attorneys of record, and for his cause of action against Scheetz, states, alleges and avers as follows:

65. Chanler incorporates in Count VI each and every allegation and averment as set forth in Paragraphs 1-64 and as if fully set forth herein *in haec verba.*

66. Between June 1, 2015 and June 18, 2015, Scheetz had sexual intercourse with Chanler who was then 15 years old.

67. Chanler lacked the capacity to consent to the sexual intercourse due to his age.

68. Scheetz caused contact with Chanler that was offensive and would be offensive to a reasonable person.

69. As a result of the offensive contact, Chanler was damaged.

70. As a result of Schettz's conduct Chanler suffered embarrassment, public humiliation and loss of enjoyment of life.

9

**WHEREFORE**, Chanler prays for judgment against Scheetz for actual compensatory, and punitive damages, attorney's fees and expenses, for his costs incurred herein, for interest at the legal rate, and for such further and additional relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

71. Plaintiff requests a demand for jury trial on all issues.

**CORBETT LAW FIRM, P.C.**

/s/ Brandon C. Potter
DANIEL P. MOLLOY    #58871
BRANDON C. POTTER    #52232
PO Box 8880
Springfield, MO 65801-8880
Ph. (417) 866-6665
Fax (418) 866-6699
dmolloy@corbettlawfirm.com
Attorneys for Plaintiff